## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF NEW YORK

---

**UNITED STATES OF AMERICA**

**v.**                                            **MEMORANDUM OF LAW**

**PEDRO GONZALEZ,**                               **Indictment No. 00-CR-304(TJM)**
                                                  **Civ. No. 09-cv-01345**
                   **Defendant.**

---

## MEMORANDUM OF LAW IN SUPPORT OF
## APPLICATION FOR CERTIFICATE OF APPEALABILITY

Petitioner, Pedro Gonzalez, by and through his counsel, Paul J. Evangelista,

Assistant Federal Defender, moves the District Court for the Northern District of New York

pursuant to 28 U.S.C. § 2253 and Rule 22, of the Federal Rules of Appellate Procedure, for an

order granting him a Certificate of Appealability ("COA") permitting appeal of denial of the

relief requested in his habeas corpus petition filed pursuant to 28 U.S.C. § 2255 and denied on

August 5, 2010.

Petitioner desires to appeal the order of the District Court denying his

request for vacatur of his plea and sentence and for a hearing.  He has filed a timely notice of

appeal.  Petitioner made "a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2).  Petitioner also demonstrated "that reasonable jurists could debate whether (or, for

that matter, agree that) the petition should have been resolved in a different manner or that the

issues presented were adequate to deserve encouragement to proceed further." Slack v.

McDaniel, 529 U.S. 473, 484 (2000) (quotations omitted).  The question of the quality of the

representation received by Mr. Gonzalez is debatable and should have proceeded to a full

evidentiary hearing or have been resolved in his favor given the history of his counsel, the past

practices of his counsel in representing him and other clients, the sworn statements in support of

his petition and counsel's disbarment.  *See*   Miller-El v. Cockrell, 537 U.S.322,  123 S.Ct. 1029,

1039 (2002)(It is consistent with 28 U.S.C. § 2253 that a certificate of appealability will issue in

some instances where there is no certainty of ultimate relief).

The standard for issuance of a certificate of appealablity adopted from *Barefoot v.*

*Estelle*, 463 U.S. 890, 893 (1983), declared that to obtain a certificate of probable cause under

the preceding statute, a habeas petitioner must present a "substantial showing of the denial of a

federal right."  This requirement encompasses "a 'question of some substance,' or a 'substantial

showing of the denial of a federal right,' in which the petitioner need not show he should prevail

on the merits."   463 U.S. at 893 (1983).  The necessity of the request for the certificate

demonstrates that he has already failed in that endeavor.  *Id.* at 893, n.4.  Rather, [the petitioner]

must demonstrate that the issues are debatable among jurists of reason; that a court could resolve

the issues in a different manner; or that the questions are adequate to deserve encouragement to

proceed further.  *Id.*

Mr. Gonzalez can amply demonstrate that he has been both denied the federal right to

counsel and to plead in a knowing and intelligent manner to an indictment.  In addition his

petition presents questions of substance related to the entirety of his representation by trial

counsel which deserve certification for appeal.

II.     **CONSTITUTIONAL ISSUES WORTHY OF APPELLATE REVIEW**

The constitutional issues which appellant wishes to brief on appeal before the Second

Circuit are:

A.     Whether Trial Counsel Failed to Meet the Professional Standards for Representing Mr. Gonzales during the Pre-Plea, Plea and Sentencing Stages of the Criminal Proceeding and thus Ineffectively Performed as Counsel to Mr. Counsel Violating the Sixth Amendment.

B.     Whether the Lack of Effective Representation Resulted in a Plea and Sentence Which Had a Reasonable Probability of a Different Result Had Counsel Complied with the Professional Standards of Practice Resulting in Prejudice to Mr. Gonzalez.

C.     Whether a "Per se" Conflict Existed Denying Mr. Gonzalez Constitutionally Effective Counsel in Violation of His Right to Counsel at All Stages of the Criminal Proceeding.

D.     Whether Mr. Gonzalez Demonstrate a Factual Conflict Requiring Hearing to Fully Develop the Factual Circumstances Surrounding the Ineffective Representation By His Trial Counsel.

III.     **THE DECISION OF THE DISTRICT COURT DENYING THE REQUESTED RELIEF PURSUANT TO 28 U.S.C. SECTION 2255 WAS IN ERROR.**

A.     **Trial Counsel Failed to Provide Effective Representation of Mr. Gonzalez**.

A defendant must show (1) that counsel's performance was deficient, and (2) that such

performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668,  687 (1984);

*United States v. Cruz*, 785 F.2d 399 (2d Cir. 1986).  This inquiry should focus "on the

fundamental fairness of the proceeding whose result is being challenged." *Strickland*, 466 U.S. at

696, 104 S.Ct. at 2069. The court's central concern is with discerning "whether, despite the

strong presumption of reliability, the result of the particular proceeding is unreliable because of a

breakdown in the adversarial process that our system counts on to produce just results," *id.* at

696, 104 S.Ct. at 2069. Mr. Gonzalez supplied numerous examples of conduct by his counsel

which fell below the standards of practice. At every step of the criminal proceedings counsel committed some error or omission which significantly impacted the progression and result of the criminal case against Mr. Gonzalez.

      i.     *Counsel Failed to Protect and Advocate the Interests of Mr. Gonzalez During the Plea Negotiations, Debriefings, Pre- Plea Motions and the Resulting Plea Agreement.*

During pre-plea proceedings trial counsel was absent from proffer meetings with the government or late, failed to inform Mr. Gonzalez of the full consequence of his plea and did not review the discovery information with Mr. Gonzalez.  A review of the discovery and an understanding of the alleged conspiracy as a whole required advocating that the amounts of the controlled substances for which Mr. Gonzalez was being held responsible were partially manipulated by the requests of the undercover agents, their interference with fulfilling the requests or provided as result of fear and intimidation. *Gonzalez Affidavit, attached to Second Habeas Petition.[1]*  Mr. Gonzalez had told his counsel about these issues.  *Id.*  Yet counsel left him to fend for himself during proffer sessions against the agents who had been a part of the sting operation.  *Gonzalez Aff., ¶¶ 18-20.*

As stated in the original petition, counsel failed to follow up on the discovery material to discern what type of criminal case Mr. Gonzalez was facing.  *Second Habeas Petition, pp.9-10.* The lack of a motion for bill or particulars or other discovery resulted in Mr. Gonzalez pleading to an agreement in which he admitted being involved in a drug conspiracy when arguably, Mr. Gonzalez had agreed to something different which later became a conspiracy involving controlled substances.  *See United States v. Ceballos, 340 F.3d 115 (2d Cir. 2003)*(Treating the

---

[1]The Second Habeas Petition with the Affidavit and Exhibit in support is attached as Ex. 1 but referenced as "Second Habeas Petition" with the Exhibits retaining their original reference for simplicity in referencing.

conspiracies as distinct).  This oversight also resulted in the drug and bribery offenses being grouped at sentencing with the drug conspiracy controlling the guidelines calculation.[2]

The plea agreement which was eventually reached differed from the initial draft in significant ways which where detrimental to Mr. Gonzalez.  *Compare Exs. E & F.*  It is obvious from the correspondence, the pre-plea discussions with Mr. Gonzalez and the number of proffer sessions that counsel relied solely upon Mr. Gonzalez assisting the government in its investigation of the conspiracy to reduce the sentence.[3]  Other than offering assistance, counsel did not advocate pre-plea or post-plea in support of a mitigated sentence.  In fact, although Mr. Gonzalez attended a number of proffer sessions, and provided information counsel did not secure the benefit of the original draft plea agreement or a motion for reduced sentence from the government.  Mr. Gonzalez instead pled to more charges than originally offered with no commitment related to a motion for reduced sentence under 18 U.S.C. 3553(e) or U.S.S.G. section 5K1. *Ex. D. Of Original Habeas Petition.*

In a similar case in the Eastern District of Michigan, a state habeas petitioner was granted relied where his second attorney had failed to seek and insist on a plea deal being reinstated which would have given the petitioner a one year sentence over the ten year sentence he received in a subsequent plea agreement.  The district court relied on cases from the Sixth Circuit which held that when defense counsel has rendered ineffective assistance of counsel in rejecting a plea

---

[2]The impact of combining the conspiracies could not be fully assessed because the Pre-Sentence Investigation Report (hereinafter "PSR") did not assess how the controlled substances offset the amount that was charged for specific individuals.  Instead the bribery amounts were simply listed in total dollar figures instead of breaking out the amount equivalent to the payment of controlled substances.

[3] In fact, it appears that counsel was relying exclusively on the receipt of a 5K1 motion for a reduced sentence because at the sentencing that motion and the lack of the motion was the only area of sentencing law which was discussed by defense counsel.

deal or failing to convey the offer, petitioner is entitled to seek the original deal as a remedy. *McBroom v. Warren, 542 F.Supp.2d 730, 738-39 (E.D.Mich. 2008).* In the case of Mr. Gonzalez, he was led to believe that his sentence did not expose him to a mandatory minimum sentence. He was also led to believe that his assistance would result in a sentence significantly less that the mandatory minimum. Just as the petitioners in *McBroom* and the case relied upon, *Magana v. Hofbuaer, 263 F.3d 542, 551(6th Cir. 2001)*, Gonzalez was left uninformed of the particulars of the first plea agreement offered, its benefits, his reponsibilities and the possible sentence. Subsequently when the second plea agreement was offered, Gonzalez did not receive accurate sentence information and no explanation was given as to why the substantial assistance language was pulled and that there was as a result no contractual basis for holding the government to that commitment. *Gonzalez aff. ¶36.*

ii.     *The Plea by Mr. Gonzalez Was Not Knowing and Voluntary*

A guilty plea must be made knowingly, voluntarily, and  intelligently. *Boykin v. Alabama,* 395 U.S. 238 (1969). *See also Bryant v. Cherry, 687 F.2d 48 (4th Cir. 1982), cert. denied 459 U.S. 1073.* In order to plead voluntarily, the defendant must know the direct consequences of his plea, including the actual value of any commitments made to him. *Mabry v. Johnson 104 S.Ct. 2543, 2547 (1984).* Mr. Gonzalez started cooperating early in the case and eventually pled guilty because he had been advised that if he did so he would probably receive "time served" based upon a credit of three days federal time for every one day served in Oneida County as explained by his counsel. *Gonzalez aff. ¶25.* These unrealistic estimates were similarly discussed with his family.[4] Even after the Government provided notice to counsel that

---

[4]Although Gonzalez faced a ten year mandatory minimum based upon the drug amounts, this was not addressed by his counsel. He became aware of it at the plea but was not given the opportunity to address the court further.

no 5K1 motion was forthcoming more than a month before sentencing, trial counsel kept Mr. Gonzalez uninformed and did nothing to secure any relief for Mr. Gonzalez.  Gonzalez aff. ¶ 52. The Supreme Court has ruled that a plea is involuntary if it was based upon promises or threats which deprived it of a voluntary character.  *Machibroda v. United States, 368 U.S. 487, 493 (1962).* "The validity of a guilty plea hinges on whether it was a voluntary and intelligent choice among alternative courses of action open to the defendant." *Banks v. United States, 920 F.Supp. 688 (E.D.Va. 1996).*  The plea by Mr. Gonzlaez was based upon a limited amount of information about the case against him and even less understanding of the possible defenses that had been forgone and the repercussions of signing the plea agreement.  Mr. Gonzalez had not seen the discovery materials nor been apprised of their contents. In addition, Mr. Gonzalez had been threatened by one of the agents during a debriefing session with a sentence of thirty years if he did not say what they wanted. *Gonz. Aff. ¶ 18.*  Mr. Perez-Olivo showed up late to the plea, and did not explain or allow Mr. Gonzalez to fully read the plea agreement that he was seeing for the first time on that day.  His counsel simply told Mr. Gonzalez to answer "yes" when questioned. *Gonzalez aff. ¶ 35.*

In the context of the a plea agreement, a defendant who pleads guilty upon the advice of counsel satisfies the first prong of the *Strickland* analysis by showing that the advice he received *to plea from counsel was not within the range of competence demanded of attorneys in criminal* cases. *Hill v. Lockhart, 474 U.S. 52, 56-57 (1985)* (internal citations omitted). The second, or prejudice, prong of the <u>Strickland</u> analysis is satisfied by demonstrating that there is a reasonable probability that, but for counsel's errors, the defendant would have proceeded to trial instead of pleading guilty. *United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).*

Defense attorneys have "a constitutional duty to give their clients professional advice on

the crucial decision of whether to accept a plea offer from the government." *United States v. Pham, 317 F.3d 178, 182 (2d Cir. 2003)* (citing *Boria v. Keane,* 99 F.3d 492, 498 (2d Cir.1996)). Misinformation about a statutory minimum is no less demonstrative of counsel's incompetence, nor necessarily less significant to a defendant's decision to plead guilty, than an error about a statutory maximum. *United States ex rel. Hill v. Ternullo, 510 F.2d 844, 847 (2d Cir. 1975).*  In both cases, counsel is not being second-guessed about a prediction which has proven inaccurate but, rather for a misstatement of an easily accessible fact. Mr. Gonzalez did not operate under the understanding that he was facing a sentence that was subject to s sentencing guidelines calculation and a mandatory minimum.  Rather he was informed that if he cooperated he would get a letter from the judge that most likely would result in time served. *Gonzalez aff. ¶ 36.*

The basis for finding the plea involuntary is similar to the basis for doing so in *Ternullo. Id. at 847.*  Prior to Gonzalez's plea his counsel told him he had nothing to worry about and that he would not get more than two years.  In addition, he told him that whatever the judge said during the plea would not really apply because the government was going to give him a letter later that would be about the sentence. Mr. Gonzalez acknowledged what the judge  asked him and appeared to be knowing and voluntarily pleading, but his counsel had undermined that by only providing him with some of the information he needed, and misrepresenting the sentencing aspects.  The focus in this instance is his understanding of the consequences of the plea-an understanding which counsel, along with the court, bore the burden to ensure and failed. *Ternullo, 510 F.2d at 847.*   Mr. Gonzalez attempted to clarify whether he would be able to address the court.  His counsel cut him off and explained that Mr. Gonzalez wanted to tell his story to which the court indicated that he would be able to do so at the time of sentencing.

An inevitable deportation was also one of the repercussions facing Mr. Gonzalez if he

pled guilty in 2001 which was left unexplained. Unfortunately, advising Mr. Gonzalez about the fact that he would be deported as a result of his plea, conviction and sentence was another professional lapse in Mr. Perez-Olivo's representation of Mr. Gonzalez. During the limited conversations with trial counsel,  Mr. Gonzalez was consistently told to go along with what was happeing so as not to upset the judge.  At no time was he informed of the potential for deportation on the various charges that were part of his plea and convictions.   The agreement which Mr. Gonzalez eventually signed was also devoid of any references to the deportation or immigration consequences. *Ex. F.*  The violations to which Mr. Gonzalez pled guilty controlled substance offenses and the bribery offense were unquestionably deportable offenses at the time of his plea.

In the instant case, the same immigration statute that applied to the petitioner in *Padilla v. Kentucky* is equally applicable to Mr. Gonzalez, and would be found to be succinct, clear, and explicit in defining the removal consequence for the convictions. *See __ U.S. __, 130 S.Ct. 1473, 2010 WL 1222274, *11 (2010)* 8 U.S.C. § 1227(a)(2)(B)(I) ("Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance ..., other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable").  Mr. Gonzales received the same sub-par representation as Mr. Padilla.  Mr. Gonzalez was prejudiced in the lack of information because his later immigration proceeding and deportation is now a forgone conclusion as a result of this plea. *Padilla* at 1480 (Once a noncitizen has committed a removable offense his removal is practically inevitable except for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal which is not available for an offense related to trafficking in a

controlled substance). See § 1101(a)(43)(B); §1228.  Recently, a New York court granted post-conviction relief based upon *Padilla* even where the counsel and court had informed the defendant that he faced possible immigration consequences. *People v. Jose Garcia,__ N.Y.S.2d __ 2010 WL 3359548 **5-6.*  The court found that even after the court warned him, the defendant was prejudiced because he relied on incorrect advice from an immigration attorney and no advice from his defense attorney. *Id.*

Even if one instance alone was not enough to show the ineffectiveness of counsel, the accumulation of neglect and errors prior to the plea and arriving at the plea demonstrated an ineffective performance as a whole and produced a result which would have been different, either in a trial or in a better bargain had Mr. Gonzalez been represented by adequate counsel.[5] *Second Habeas Petition, pp. 12-17.*

> iii.    *Trial Counsel Abandoned the Petitioner During the Pre-Sentence Investigation, Failed to Advocate at Sentencing and Presented a Woefully Inadequate Motion to Withdraw.*

After the plea proceeding trial counsel virtually abandoned Mr. Gonzalez for almost ten months. He did not forward the PSR when it was complete.  *Ex. L.*  He did not file any objections to the PSR nor did he file a sentencing memorandum offering arguments in mitigation of the recommended sentence.  *Second Habeas Petition*, pp. 22-25.  The lack of sentencing memorandum or any type of sentence advocacy was glaring in light of the government's letter more than a month prior to sentence that his client would not receive credit for any assistance he had given during the multiple debriefing sessions.  *Second Habeas Petition*, pp. 25-32.  Further, failing to seek a short adjournment in light of Mr. Gonzalez's request to withdraw his plea would

---

[5] The comparison of results to other co-defendants who received lower sentences than Mr. Gonzalez after having gone to trial and having been involved in more than one conspiracy is indicative of the likelihood of obtaining a better result with competent counsel.

have better served his client but may have resulted in trial counsel being replaced. *Second Habeas Petition*, pp. 32-37.  Counsel also failed to investigate the allegations by Mr. Gonzalez that he had felt he was under threat, that his family faces threats and that he had been threatened during a debriefing.  Development of these facts and presentment in a formal motion would have better served the request by Mr. Gonzalez to move to withdraw his plea, better informed the court rather that raising its ire, and posed a valid basis for withdrawal. *United States v. Lopez, 385 F.3d 245, 250 (2d Cir. 2004)*(Defendant has a right to seek to withdraw plea for any reason). In addition, the question arises as to whether the withdrawal was not sought earlier or more formally because of the risk of the district court finding out about counsel's lack of good standing or the risk of losing Mr. Gonzalez due to his significant disappointment with counsel.

       B.      **The District Court Decision Was in Error Because Mr. Gonzalez had Demonstrated Trial Counsel's Performance Fell Below the Reasonable Standard at Every Stage of the Proceeding and Mr. Gonzalez Suffered Prejudice as a Result.**

        Prejudice is shown if, but for the deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *United States v. Wiggins,* 539 U.S. 510, 534 (2003). "Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea ... to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca,* 411 F.3d 315, 320 (2d Cir.2005) (citing *United States v. Couto,* 311 F.3d 179, 187 (2d Cir.2002); *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). To establish prejudice where he has pled guilty, a petitioner must show by a reasonable probability that, but-for counsel's advice, petitioner would not have accepted the guilty plea and instead would have gone to trial. *See Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *United States v. Arteca,* 411 F.3d 315, 320 (2d Cir.2005). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland  at*

*694, 104 S.Ct. 2052.* Had Mr. Gonzalez received adequate counsel he may have decided to go to trial or he may have received the benefit of a better bargain as a result of securing the first plea agreement.  In addition, proper sentencing advocacy related to second agreement would have provided the district court the opportunity to sentence him in conformity with section 3553(a) and a full consideration of all the factors implicated at sentencing as outlined in the original petition.  *See Hough v. Anderson, 272 F.d 878, 891, n.3 (7ᵗʰ Cir. 2001)(Strickland* clearly allows the court to consider the cumulative effect of counsel's errors in determining whether a defendant was prejudiced. 466 U.S. at 694, 104 S.Ct. at 2068 ("but for counsel's unprofessional errors, the result of the proceeding would have been different").

In addition, the fact as found by the District Court,  that the PSR may have properly presented the appropriate sentencing guidelines calculation does not support a finding that there was no sentencing prejudice suffered by Mr. Gonzalez.  Although the amount by which a defendant's sentence is increased by a particular decision may be a factor to consider in determining whether counsel's performance in failing to argue the point constitutes ineffective assistance, under a determinate system of constrained discretion such as the Sentencing Guidelines it cannot serve as a bar to a showing of prejudice. *Glover v. United States, 531 U.S. 198, 204-205 (2001)(*Reversing the finding that an increase in sentence of 6 to 21 months was not ineffective because of defense counsel's failing to request counts be grouped was did not bar finding prejudice).

## III.    The District Court Erred Upon finding that No "Per Se" Conflict Existed Denying Mr. Gonzalez Constitutionally Effective Counsel.

The decision and order of the District Court erred when it universally denied the *per se* ineffective assistance of counsel standard to the facts presented. During the pre-plea proceedings the court discussed and advised trial counsel that he needed to seek admission to the Northern

District of New York. Counsel never did so. *Ex. B*. During the pendency of the prosecution against Mr. Gonzalez a complaint seeking the disbarment of his trial counsel was filed with the Puerto Rican bar and granted. *Ex. P.* Prior to the formal proceedings multiple attempts had been made by the bar in Puerto Rico to bring trial counsel before the tribunal to address the outstanding issues. *Ex. P.* Trial counsel did not appear to address the complaint and he was subsequently disbarred. This disbarment proceeding coincided with the plea, debriefings, pre-sentence investigation and sentencing. *Ex. P.* At the same time complaints were being filed with the Third Department Disciplinary Committee in New York. *Ex. Q, p. 45, n. 2.* Those complaints eventually resulted in trial counsel's disbarment from the New York state bar as well.

Petitioner recognizes the limited nature of the application of the *per se* rule to allegations of ineffective assistance of counsel. *See Solina v. United States* 709 F.2d 160, 167 (2d Cir. 1983)(Limiting decision to situations where, unbeknown to the defendant, his representative was not authorized to practice law in any state, and the lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character). Mr. Gonzalez steadfastly asserts that his basis for requesting relief was not because of a mere technical oversight but rather because his trial counsel had been disbarred for *want of moral character* in one jurisdiction without a defense and suffered under similar allegations in the only other jurisdiction to which he remained admitted. *Ex. P. Solina at 167-168.*

The character and fitness of  Mr. Perez-Olivo was questioned by not simply one complaint starting in 1996 and proceeding through 2001, but from complaints lodged by six former clients in the Third Department of New York. Although, trial counsel remained "admitted" to the bar in New York, trial counsel could not present himself to the court in "good

standing" as required for admission to the district bar.  In addition, zealous advocacy on behalf

of his client such as objecting to drug amounts, role in the conspiracy, role of government

agents,  motions to compel the government to move under 18 U.S.C. 3553(e) or provide relied

under U.S.S.G. section 5K1.1, sentencing objections, and an adequately briefed and filed motion

to withdraw all presented the risk of the prosecutor and district court judge discovering that Mr.

Perez-Olivo was alleged to lack the fitness and character to maintain his admission to the Third

Department.  The district court had requested that counsel seek admission.  Howver, counsel

risked having to disclose the proceedings and a possible bar from further practice by the district

court had he complied. *See Stilley v. Bell, 155 Fed. Appx. 217, 2005 FED App. 0928N (6th Cir.

2005)(*Denial of attorney's pro hac vice petition for admission to the district court for the purpose

of representing a defendant in a criminal matter was not an abuse of discretion, given attorney's

extensive list of disciplinary violations and the district court's reasonable concern that such

violations potentially could lead to a claim for ineffective assistance of counsel*).  The admission

was not pursued possibly because of the limited contact with the court and the Government

along with trial counsel' self-effacing behavior during his appearances.

    The lack of moral character and fitness to practice law for Mr. Perez-Olivo as found by

the bar in Puerto Rico and again in New York presented the narrow instance in which his

representation of Mr. Gonzalez could not convince a court beyond a reasonable doubt that Mr.

Gonzalez suffered no harm. *Solina, 709 F.2d at 168 (2d Cir. 1983).*  These determinations

coupled with the inability to present himself in "good standing" to the district court for the

Northern District of New York support finding that his representation was *per se* ineffective.

    The second basis for applying the narrow *per se* exception involved the conflict between

zealously advocating for Mr. Gonzalez and keeping the disciplinary issues secret. As noted

earlier, at every court appearance counsel risked having to answer whether he had applied for his pro hoc vice admission.  Trial counsel risked losing a paying client, and possible sanction by the court for his non-disclosure of his lack of "good standing" and thus inability to be admitted pro hoc vice. *See* Local Rules 83.1 and 10.1, Local Rule for the Northern District of New York. In the case of Mr. Gonzalez, his advocate was never wholly free from the fear of sanctions or dismissal as counsel. Any vigorous defense such as compelling a 5K1 motion or filing a fromal motion to withdraw the plea risked the possible discovery his lack of credentials and own wrongdoing.  *Hurel Guerrero v. United States, 186 F.3d 275, 281 (2d Cir. 1999)*

## IV.    The Failure of the District Court to Grant An Evidentiary Hearing Bars Mr. Gonzalez from Fully Developing the Record in Support of His Petition.

The district court abused its discretion when it failed to allow for additional discovery and a hearing.  Mr. Gonzalez and his family have consistently raised the issue of the quality of representation provided by Mr. Perez-Olivo and he has yet been made to answer specific questions related to the representation under oath.  His personal and professional history demonstrate he has consistently lied and failed to meet professional standards of representation especially during the period he was representing Mr. Gonzalez.  *Second Petition, pp. 38-42.*

The District Court did not dismiss the petition outright after initial review, but instead ordered the Government to respond to the petition. *Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts.* When briefing on a § 2255 petition reveals contested issues of material fact, an evidentiary hearing is held. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "To warrant a hearing on an ineffective assistance of counsel claim, *the defendant need establish only that he has a*

*'plausible' claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim.*" *Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009)* (citation omitted and emphasis added).

The petition of Mr. Gonzalez met the standard for grant of a hearing. *Puglisi at 213*. The procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding.

> The petitioner's motion sets forth his or her legal and factual claims, accompanied by relevant exhibits: e.g., an affidavit from the petitioner or others asserting relevant facts within their personal knowledge and/or identifying other sources of relevant evidence. *Compare* Rules Governing § 2255 Proceedings, Rules 2, 4(b), *with* Fed.R.Civ.P. 56(a)-(c); *see also Blackledge v. Allison,* 431 U.S. 63, 80-83, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). The district court reviews those materials and relevant portions of the record in the underlying criminal proceeding. *Compare* Rules Governing § 2255 Proceedings, Rules 4(b), 8(a) *with* Fed.R.Civ.P. 56(c). The court then determines whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a *prima facie* case for relief. If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made.

*Id.* The grant of hearing would have brought the weight of the district court's jurisdiction and ability to obtain testimony under oath and subject to cross-examination. Many of the statements made by Mr. Gonzalez were supported by documents in the record or gathered from other sources and raised questions of fact requiring resolution after a hearing.

**Conclusion**

As a result of demonstrating that reasonable judges could disagree with the district court's previous resolution of the constitutional claims presented by Mr. Gonzalez nor the ability of the District Court to conclude the issues presented are inadequate to deserve encouragement to proceed further the certificate of appealability related to those issues should issue. *Miller-El v. Cockrell,* 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (citing *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).


DATED: September 7, 2010

                                        ALEXANDER BUNIN
                                        Federal Public Defender

                              By:   /s/ *Paul J. Evangelista*
                                        Paul J. Evangelista, Esq.
                                        Assistant Public Defender
                                        Bar No.: 507507
                                        39 North Pearl St., 5th Floor
                                        Albany, NY 12207
                                        paul.evangelista@fd.org

TO:   United States District Court
      Office of the Clerk
      James T. Foley U. S. Courthouse
      445 Broadway
      Albany, NY 12207

      Honorable Thomas J. McAvoy
      Senior United States District Court Judge
      Courthouse and Federal Building
      Binghamton,  New York 13901

      United States Attorney's Office
      Paul Silver, AUSA
      James T. Foley U. S. Courthouse
      445 Broadway
      Albany, NY 12207